UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-11970-RGS

GOVERNMENT EMPLOYEES INSURANCE COMPANY et al.

v.

ANALGESIC HEALTHCARE, INC. and
ROY EDGERTON

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS

March 28, 2017

STEARNS, D.J.

Government Employees Insurance Company and several subsidiary and sister auto insurers (collectively GEICO) allege that defendant Analgesic Healthcare, Inc. (AHI), and its principal, Roy Edgerton, perpetrated a scheme to bilk GEICO into reimbursing the purchase of transcutaneous electrical nerve stimulation (TENS) devices[1] and associated accessories. According to the Complaint, although TENS devices retail at approximately $40-$55, AHI typically sought a payment of $795 per unit. AHI, in turn, kicked back a portion of the hyper-inflated price to health care providers for prescribing its equipment.

---

[1] TENS devices reduce feelings of pain by sending electrical currents to stimulate nerves.

> AHI captures orders for durable medical equipment by bribing and paying kickbacks to health care providers. AHI pays $200 to each doctor, physical therapist, and chiropractor who prescribes and orders portable pain-reduction equipment for privately-insured patients. In large-scale facsimile transmissions, AHI admits that practitioners receive $200 per "file" that they "identify" for ordering AHI equipment.

Compl. ¶ 2. In addition, "AHI profits from its bribes and kickbacks by intentionally engaging in several deceptive and abusive patterns of conduct, *i.e.*, excessively inflating prices for equipment, over-reporting the quantity of supplies issued to patients, and replenishing supplies far earlier than necessary." *Id.* ¶ 4. GEICO's Complaint sets out eight claims: Violations of The Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1962(c) as to Edgerton (Count I); Conspiracy to Violate RICO, 18 U.S.C. § 1962(d) (Count II); Common Law Fraud (Count III); Money Had and Received as to AHI (Count IV); Unfair and Deceptive Trade Practices (Count V); Breach of Fiduciary Duty (Count VI); Participation in Breach of Fiduciary Duty by Another (Count VII); and Declaratory Judgment as to AHI (Count VIII).

AHI and Edgerton move to dismiss the Complaint, asserting, *inter alia*, that GEICO has failed to state a viable RICO claims because the allegations do not meet the specificity requirement of Fed. R. Civ. P. 9(b), and because AHI owed no duty to GEICO to disclose its $200 kickbacks to providers.

2

Defendants also contend that GEICO failed to plausibly allege an association-in-fact to sustain the enterprise element of the RICO conspiracy set out in Count II. RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).[2] The term "enterprise" "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Count I of the Complaint alleges that "AHI constitutes an 'enterprise.'" Compl. ¶ 284. Count II does not separately identify an enterprise, but alleges that "Edgerton and AHI intentionally conspired with each other, as well as other persons known and unknown to GEICO, to further facilitate, support, and/or operate an association-in-fact enterprise." Compl. ¶ 319.

Defendants first argue that, with respect to Count II, AHI cannot both be an alleged co-conspirator and the "enterprise" within the meaning of RICO, because "the 'person' alleged to be engaged in a racketeering activity

---

[2] Under 18 U.S.C. § 1962(d), "[it] shall be unlawful for any person to conspire to violate" a substantive provision of RICO.

3

(the defendant, that is) must be an entity distinct from the 'enterprise;' under § 1962(c) the enterprise is not liable." *Odishelidze v. Aetna Life & Cas. Co.*, 853 F.2d 21, 23 (1st Cir. 1988). GEICO does not dispute this point of law, but in its briefs, contends instead that AHI's "referral network" of healthcare providers is the distinct association-in-fact of Count II. "[T]he referrers were *separate* from and outside AHI itself; the agreements used by AHI, emphasize that referrers are 'independent.'" Opp'n. at 11 (emphasis in original).

Distinctness from the RICO actor, however, is not the only requirement of an association-in-fact.

> From the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose. As we succinctly put it in [*United States v.*] *Turkette,* an association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." 452 U.S. [576,] 583 [(1981)].

*Boyle v. United States*, 556 U.S. 938, 946 (2009). GEICO maintains that the network of healthcare providers exhibit the structural features of *Boyle* because the providers "*all opted-in* [] as 'independent' 'agent,' 'contractor,' or 'representative' of AHI," Opp'n at 11 (emphasis in original), "as being familiar with defendants' unsolicited facsimile advertisements, would have been aware that defendants' referral network is extensive," *id.*, and "had a

4

common purpose to aid AHI in obtaining insurance benefits for [durable medical equipment] prescribed by the network," *id.* at 12.

The court agrees with defendants, however, that the allegations of the Complaint do not support the inference that the healthcare providers "associated together for a common purpose." According to the Complaint, the providers – including doctors, physical therapists, and chiropractors – hail from "at least 45 states and a U.S. territory." Compl. ¶ 142. While the diverse and geographically disparate providers are alleged to have engaged in parallel conduct – that they each prescribed AHI equipment to a GEICO insured and received kickbacks from AHI – the Complaint says nothing about how the providers coordinated or collaborated with each other, or even knew one another to be participants in the same scheme. *See Boyle*, 556 U.S. at 946 ("The concept of 'associat[ion]' requires both interpersonal relationships and a common interest.").

As the Supreme Court has made clear, allegations that "individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates" fail to make out the existence of an association-in-fact enterprise. *Id.* at 947 n.4. In *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300 (3d Cir. 2010), the Third Circuit dismissed as inadequate allegations of RICO associations-in-fact where defendant

5

insurance brokers allegedly funneled particular clients to particular groups of insurers in a scheme intended to control prices and improperly curtail competition. "[A]lthough plaintiffs had adequately alleged bilateral agreements (regarding the steering of business and the payment of contingent commissions) between each broker and its insurer-partners, plaintiffs had failed to plead facts plausibly suggesting collaboration among the insurers. The asserted hub-and-spoke structures therefore lacked a "unifying 'rim.'" *Id*. at 374. Similarly, while GEICO adequately alleges that each provider accepted AHI's offer of a kickback in exchange for the prescription of AHI equipment, there is no "unifying rim" even hinting that that the providers acted collectively.

In the case of *In re Lupron Mktg. & Sales Practices Litig*., 295 F. Supp. 2d 148 (D. Mass. 2003), this court rejected a highly analogous theory that physicians who prescribed an expensive prostate cancer drug constituted a RICO association-in-fact in an alleged scheme to artificially inflate drug prices.

> "Common purpose" does not mean commonality of motive, it means coordinated activity in pursuit of a common objective. *See* [*Libertad v*.] *Welch*, 53 F.3d [428,] 443 [(1st Cir. 1995)] ("[S]imilarity of goals and methods does not suffice to show that an enterprise exists; what is necessary is evidence of systematic linkage, such as overlapping leadership, structural or financial ties, or continuing coordination."). Here, as defendants point out, there are no allegations (and it is difficult to see how there

6

> could be) that the thousands of doctors who benefitted from discounted purchases or free samples of Lupron® were associated together in any meaningful sense, or were even aware of one another's existence as participants in a scheme to defraud. *See Feinstein* [*v. Resolution Trust Corp.*], 942 F.2d [34,] 41 n. 7 [(1st Cir. 1991)]; *Blue Cross of California v. SmithKline Beecham Clinical Labs., Inc.*, 62 F. Supp. 2d 544, 553 (D. Conn. 1998). Without the elements of organization and control, whether informal or formal, and the existence of an association, whether legal or factual, any group of persons sharing a common occupation, *e.g.,* urologists and lawyers, and a similar motive, *e.g.,* greed, could be held to constitute a RICO enterprise. This essentially is all that plaintiffs have alleged.

*Id.* at 173-174. Because GEICO's Complaint also alleges a "group of persons sharing a common occupation . . . and a similar motive," but goes no further in establishing an association among these persons, Count II does not adequately plead the enterprise element of RICO and will be dismissed.

Absent the presence of AHI as a RICO defendant, the remainder of the Complaint will be dismissed for improper venue. Under the RICO venue statute, "[a]ny civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C § 1965(a). GEICO has not rebutted defendants' assertion that the Complaint does not establish any jurisdictional contacts between Edgerton, a Florida resident and the sole remaining RICO defendant, and

7

the state of Massachusetts.  *See* Mem. at 13 n.8.  Under the general venue statute, a civil action may be brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C § 1391(b).  As AHI and Edgerton are both Florida residents, and Massachusetts is one of "at least 45 states and a U.S. territory" where the alleged kickback scheme took place, this state is not "a judicial district in which a substantial part of the events . . . giving rise to the claim occurred" and is not the proper venue for this dispute.

## ORDER

For the forgoing reasons, defendants' motion to dismiss is <u>ALLOWED</u>.  The Clerk will enter the dismissal and close the case.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE